*548 OPINION OF THE COURT
Philip S. Straniere, J.
Claimant, Igor Timofeyev, commenced this small claims action against the defendant, Palant & Shapiro, PC.,[1] alleging that the defendant failed to provide legal services as agreed. A trial was held on October 21, 2010. Claimant appeared without counsel. Defendant is a law firm and was represented by one of its attorneys.
Claimant testified that he had retained the defendant law firm on March 9, 2009 to assist him in refinancing his mortgage. The parties entered into a written retainer agreement dated March 9, 2009 but not actually signed by the claimant until a later date. Claimant paid the defendant $2,000 for services to be rendered in that regard as well as $679 for assistance in resolving his credit card debt. Claimant asserts that the defendant did not achieve the mortgage modification and that he in fact was able to renegotiate the mortgage on his own without the defendant’s assistance.
The retainer agreement in evidence is between claimant and Galina Stepanyuk, as the clients, and Palant, Wolf & Shapiro, PLLC (PWS). It is dated March 9, 2009; however, in the signature area, claimant and Ms. Stepanyuk both dated the agreement September 6, 2009, a date six months later. Defendant asserts that it performed in excess of $2,000 worth of legal services and that part of the problem in its not obtaining a mortgage modification for him was that the claimant did not timely provide it with documents that it needed. Defendant’s record of services rendered shows work being performed beginning in March 2009. There is no explanation as to when Martin Wolf left the firm, nor has the defendant raised as a defense that the wrong entity is being sued.
The retainer provides in the opening paragraphs:
“This retainer is for legal services by and between you (‘You’) and the firm of Palant, Wolf & Shapiro, PLLC . . . (‘We’ or ‘PWS’) .... This agreement constitutes a binding legal contract and should be reviewed carefully.
*549 “This retainer agreement is intended to confirm our discussions regarding your desire to retain and employ PWS to submit your mortgage lender the necessary documents, including applications and supporting documentation necessary for such mortgage lender to consider your request for modification of your mortgage loan and to enable us to advocate on your behalf for such modification.”
Issues Presented
A. Does Defendant Have to be Licensed as a Mortgage Broker?
The court applauds the defendant for having a written retainer agreement with the claimant setting forth the scope of the services to be performed and the projected cost involved. It is the preferred practice for all professionals to have written retainers or letters of engagement with their clients, setting forth the nature and extent of the services to be performed, the anticipated expenses and the expected compensation.
The above being said, the court finds that there are several problems with the retainer agreement. As pointed out above, the agreement is allegedly for “legal services,” yet the reason for the claimant employing the services of the defendant is “to submit your mortgage lender the necessary documents, ... for such mortgage lender to consider your request for modification of your mortgage loan.” The paragraph of the agreement labeled “Performance of Services” is for PWS to “promptly analyze and assess your financial situation.” Analysis of a financial situation is not a “legal service.” Neither is: “Research that may be performed also involves analysis of your expenses, income and the expense to income ratio.” None of these activities are customarily described as “legal services” and they are more akin to those provided by an accountant, financial planner or a mortgage broker.
Banking Law article 12-D covers “Licensed Mortgage Bankers.” It states:
“ ‘Soliciting, processing, placing or negotiating a mortgage loan’ shall mean for compensation or gain, either directly or indirectly, accepting or offering to accept an application for a mortgage loan, assisting or offering to assist in the processing of an application for a mortgage loan, soliciting or offering to solicit a mortgage loan on behalf of a third party or negotiating or offering to negotiate the terms or conditions of a mortgage loan with a lender on
*550 behalf of a third party” (Banking Law § 590 [1] [d]).
Banking Law § 590 (2) (b) requires that persons or entities providing the above-cited services be registered with the superintendent of banking as a “mortgage broker.” The same paragraph of the statute foresaw that lawyers may be performing these services, and provided for an exclusion from this licensing requirement in regard to attorneys where it states that “[n]o attorney-at-law who solicits, processes, places or negotiates a mortgage loan incidental to his legal practice shall be deemed to be engaged in the business of a mortgage broker.” (Banking Law § 590 [2] [b].)[2] There does not appear to be any reported cases as to what is meant by “incidental to his legal practice.”
It would seem to mean that an attorney who performs these functions for a client as part of that attorney’s general representation of that client need not be registered, but if the attorney is regularly engaging in the business of “soliciting, processing, placing or negotiating” mortgage loans a separate mortgage broker’s license is needed. For instance, an attorney representing a client on the purchase or refinancing of real property would not need a license, nor would an attorney trying to renegotiate a mortgage while defending a foreclosure action. However, an attorney who advertises that he or she is solely or primarily providing assistance in negotiating or renegotiating the terms of a mortgage loan, and not providing any substantive legal advice, would have to register and be licensed under the Banking Law. Claimant testified that he learned of the defendant’s services to assist in the modification of his mortgage from an advertisement on a Russian language radio program. It appears that the defendant was soliciting mortgage-related work that was not legal in nature, and thereby requiring it to comply with the Banking Law.
The defendant in the retainer agreement sets forth what it believes constitutes anticipated “legal services.” It provides, in the “Performance of Services” section, that “PWS will evaluate whether you have any litigation-based defenses to the underlying mortgage validity or to the enforcement of its terms.” This, however, does not appear to be the primary purpose of the agreement. The vast majority of the language of the retainer describes services to be rendered by someone other than a lawyer. The functions being performed by the defendant are not legal in *551 nature. It is analysis of the claimant’s financial position and the renegotiation of the claimant’s mortgage. The primary service being performed by the defendant is the “modification” of the mortgage loan. If the retainer had provided primarily for the rendering of legal services in regard to defending a potential foreclosure, with the defendant agreeing to assist the claimant in attempting to modify the existing mortgage, no license would be needed as the modification would be incidental to the legal services being rendered.
Based on the practices of the mortgage industry, an observer might conclude that attorneys are not even needed for the negotiation or closing of a mortgage loan. In fact, based upon the definitions set forth in the Banking Law, such services are not “legal.” Just about every lawyer who regularly handles residential real estate closings will tell you that, as a purchaser’s attorney, they are almost always retained by the client after the client has been “qualified” by a mortgage broker for the mortgage loan. This “qualification” was sometimes obtained even before a property to be purchased had been found. These attorneys can recite numerous incidents where, after reviewing the terms of the “mortgage commitment” with their client and asking some simple questions — like, “can you make these monthly payments?” or “you realize you are borrowing more than 100% of the value of the house?” or “this is a negative amortization loan and you may be owing the bank more than the value of the house” — they find themselves discharged as the lawyer because the real estate or mortgage broker advised the buyer, “your lawyer is going to kill the deal and you really want this house, don’t you?”
Further to this point, when mortgages are refinanced, many lenders, if not directly stating a lawyer is not needed, encourage borrowers not to use independent counsel. Also, how many lenders do not have an attorney represent them at a closing, relying either on a paralegal or a third party with a notary stamp and ink pad to insure the documents are signed? When confronted with this situation, the lender’s response uniformly is that the closer is not giving legal advice.
In fact, borrowing money using real property, especially your home, as collateral is a serious undertaking which does require the expertise of an attorney at all stages of the process to protect a client’s rights. One would think that there may actually be a relationship between the scenarios set forth above and the current foreclosure crisis, which might have been lessened by hav *552 ing attorneys — who, unlike the mortgage brokers, have a fiduciary relationship to their clients — more involved in initial loan process. Instead, we now seek to make the lawyers responsible for the accuracy of the documents being presented as part of the lender’s prima facie foreclosure case, when the need for an attorney previously in the process was seen as an impediment or, worse yet, as unnecessary.
Further, almost all residential mortgages in the United States are on forms produced by the Federal National Mortgage Association (Fannie Mae), the Federal Home Loan Mortgage Corporation (Freddie Mac), or some other government entity. As such, “negotiating the mortgage terms” with the lender is a fiction. Lenders do not permit attorneys to amend these preprinted documents. The lawyer’s function is reduced to informing the borrower-client of the contents of the documents and their legal implications. Negotiating the amount borrowed, the interest rate, and the number of years required to repay the loan are not legal functions under the Banking Law and, as stated previously, those terms are almost always in place prior to the involvement of any counsel for the borrower.
Because of an industry-wide practice of not requiring legal counsel to obtain a mortgage in the first place, it cannot be concluded that assisting a client to modify a loan is “legal services.”
Based on how the retainer was written, and taking the entire document as a whole, the primary function of the defendant was a regulated activity requiring the defendant, even though a law firm, to be licensed as a mortgage broker. The services, modification of an existing mortgage, were neither “incidental” to the defendant’s legal practice nor “legal” in nature. The services, being not primarily legal in nature, did not require a written retainer.
B. Do the Terms of Compensation Indicate Legal Services are Being Rendered?
The retainer provides for compensation in the section labeled “Fees for Services.” It states:
“For our services as above, You agree to pay PWS the sum of $3,000.00 if Your mortgage loan or equity line of credit principal balance is less than $300,000. In the event that Your loan balance exceeds $300,000 but is less than $650,000, our fee shall be $4,000 .... As a result, in your particular situation, the fee is $4,000. The fee shall be paid as follows: you *553 shall pay us 50% of the fee upon signing this retainer, which fee shall not depend on the outcome of your case. In the event that we successfully modify your loan obligations, you shall, in that event only, pay us the remaining 50% of the fee, which payment must be received by us within three (3) business days of you being notified of a successful outcome. If we are not successful, you will not owe us the balance of the fee but we, as stated earlier, will retain the initial payment as compensation for our efforts and services.”
The retainer agreement further provides:
“In event we succeed in reducing Your outstanding principal balance, we shall be entitled to receive from you in addition to the above quoted fee, compensation to two (2) percent of the amount by which the principal is reduced. For example, if your outstanding balance is currently $600.000 and we reduce it to $400,000, the additional fee shall equal two (2%) percent of the sum of $200,000, to wit: $4,000.
“For the purposes of this agreement, ‘successful modification’ means reduction of the interest rate by at least ten (10%) percent.”[3]
[2] The clear language of this compensation clause establishes that the defendant is not being hired to perform legal work. The entire scope of the services to be rendered is for mortgage modification, a nonlegal function which can be performed by anyone who is properly licensed. No legal training is needed to carry out the services set forth in the retainer. In fact, the description of services in defendant’s log confirms that no legal work was performed.
The retainer fails to provide what is the claimant’s obligation to the defendant in the event the claimant wants to cancel the agreement or if the claimant is successful in renegotiating the mortgage terms without the defendant’s assistance, as is alleged in this case. Counsel for defendant asserts that the initial *554 retainer fee was “nonrefundable.” The court is unable to find in the retainer agreement any specific language making the fee ‘ ‘nonrefundable. ’ ’
The compensation clause of the retainer agreement, when compared with the sections outlining the nature of the services to be provided by the defendant, along with the claimant’s obligation to supply information, leads to the conclusion that the purpose of this agreement is not for legal services to be rendered.
C. May an Attorney be Compensated for Nonlegal Services Rendered?
When the claimant initially contacted the defendant in March 2009, the defendant, as a law firm, was subject to the Code of Professional Responsibility (22 NYCRR part 1200). As of April 1, 2009, all attorneys in New York must adhere to the new Rules of Professional Conduct (22 NYCRR 1200.0). Neither of these codes of conduct prohibits an attorney from providing nonlegal services for a client. It would be permissible for the defendant to be compensated for assisting the claimant with a mortgage application. The question remains that, even if the services are nonlegal in nature, to what extent do the disciplinary and conduct rules apply? And, in cases where nonlegal services are rendered, is a written retainer agreement required?
The new Rules of Professional Conduct have added some guidance in this area. Rule 5.7 provides:
“Responsibilities Regarding Nonlegal Services.
“(a) With respect to lawyers or law firms providing nonlegal services to clients or other persons:
“(1) A lawyer or law firm that provides nonlegal services to a person that are not distinct from legal services being provided to that person by the lawyer or law firm is subject to these Rules with respect to the provision of both legal and nonlegal services.
“(2) A lawyer or law firm that provides nonlegal services to a person that are distinct from legal services being provided to that person by the lawyer or law firm is subject to these Rules with respect to the nonlegal services if the person receiving the services could reasonably believe that the nonlegal services are the subject of a client-lawyer relationship. . . .
“(4) For the purposes of paragraph[ ] (a) (2) . . . , it will be presumed that the person receiving nonlegal *555 services believes the services to be the subject of a client-lawyer relationship unless the lawyer or law firm has advised the person receiving the services in writing that the services are not legal services and that the protection of a client-lawyer relationship does not exist with respect to the nonlegal services, or if the interest of the lawyer or law firm in the entity providing nonlegal services is de minimis.”
Clearly, this transaction is subject to the new Rules of Professional Conduct. The retainer agreement is on law firm letterhead, as is all correspondence from the defendant. Even though this court has concluded the services being rendered were nonlegal, the claimant consulted with the defendant specifically because it was a law firm. Further, defendant’s actions made this a client-lawyer relationship. The fact that the new rules went into effect after the date of the retainer agreement does not mean defendant is not subject to them. The rules are designed to protect the rights and interests of both the client and the attorney and promote public confidence in the legal profession. Even though a section equivalent to rule 5.7 did not exist in the Code of Professional Responsibility, it does not prevent it from being applied to the activities of the parties occurring prior to April 1, 2009. Claimant did testify that he responded to an advertisement for the defendant because he initially thought that he would need the assistance of a lawyer to modify his mortgage. Clearly, the claimant was under the impression he was dealing with an attorney. This belief on behalf of the client triggered the application of disciplinary rules.
Because the actions of the defendant created a lawyer-client relationship for an activity that would have been considered nonlegal, the defendant was required to provide the claimant with a written letter of engagement.
Rules of the Supreme Court (22 NYCRR) § 1215.1 (a) provides, “an attorney who undertakes to represent a client and enters into an arrangement for, charges or collects any fee from a client shall provide to the client a written letter of engagement before commencing the representation.” The section goes on to state: “(c) Instead of providing the client with a written letter of engagement, an attorney may comply with the provisions of subdivision (a) of this section by entering into a signed written retainer agreement with the client, before or within a reasonable time after commencing the representation.” There are exclusions from this requirement set forth in section 1215.2. *556 However, none of them are applicable to this situation. The defendant did enter into a written retainer with the claimant. That retainer was then subject to the Rules of Professional Conduct in regard to the payment of legal fees.
Rule 1.5 provides:
“Fees and Division of Fees.
“(a) A lawyer shall not make an agreement for, charge, or collect an excessive or illegal fee or expense. A fee is excessive when, after a review of the facts, a reasonable lawyer would be left with a definite and firm conviction that the fee is excessive. The factors to be considered in the determining whether a fee is excessive may include the following:
“(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly . . .
“(3) the fee customarily charged in the locality for similar legal services;
“(4) the amount involved and the results obtained
“(8) whether the fee is fixed or contingent. . . .
“(d) A lawyer shall not enter into an arrangement for, charge or collect: . . .
“(4) a nonrefundable retainer fee; provided that a lawyer may enter into a retainer agreement with a client containing a reasonable minimum fee clause if it defines in plain language and sets forth the circumstances under which such fee may be incurred and how it will be calculated.”
An examination of the compensation plan set forth in the retainer agreement leads to the conclusion that the agreement is not in compliance with the above rule. There is no relationship between the work to be performed and the fee to be earned. The compensation is set as a flat fee based on the balance of the client’s outstanding mortgage amount. Defendant is to be compensated $3,000 for a mortgage of $300,000 or less; $4,000 for mortgages in excess of $300,000 to $650,000; and $5,000 for mortgages more than $650,000. By structuring payment in this manner, is the defendant alleging that it requires 66.7% more work in order to modify a $650,000 mortgage than one less than $300,000? Or that a mortgage of a million dollars or more requires the same amount of work as one of $650,000? When is *557 the fee amount determined — at the signing of the agreement or the modification? For instance, if the client has a mortgage in excess of $300,000 at the time of the retainer, and the client continues to make payments while the negotiations are ongoing, so the balance is below $300,000, does the fee get reduced? And, vice versa, if the client stops making payments and the amount owed increases, does the fee likewise increase? It cannot be determined from the language of the retainer if the structuring of compensation as set forth above leads to the fee being excessive. It does lead to the conclusion that there is no relationship between the work performed and the fee being charged. The list of services performed by the defendant does not include anything that resembles legal work, except for one telephone call made by an attorney, and the ledger statement lacks any time charges associated with the work performed.
In addition, the defendant is entitled to further compensation of 2% of the amount of the reduced principal of the loan, contingent upon the defendant achieving a reduction in the amount due. The Rules of Professional Conduct do not prohibit contingent fee arrangements.
Defendant contended that the $2,000 was a “nonrefundable” fee. Rule 1.5 (d) (4) prohibits “nonrefundable” fees but does allow a minimum fee to be charged. The fee set forth under the language of the retainer agreement is not a nonrefundable fee. It is a minimum fee which is permitted under the rule if it is reasonable and the circumstance under which the fee may be incurred, along with how it is calculated, is disclosed. The agreement is confusing in that it does not label it a “minimum fee” as it should and, as set forth above, there is no method by which to determine if it is excessive because time records are not kept by the defendant.
As pointed out above, nowhere in the agreement is there an explanation of what is the client’s obligation to the defendant in the event the client terminates the agreement before the defendant completes the contemplated services, or if the client in fact achieves a modification, as alleged here, without the aid of the defendant. Without maintaining time charges, it is impossible to determine if the minimum fee is excessive. If the client terminated the relationship the next day, clearly the defendant would not be entitled to the minimum fee if no work was done. Likewise, there is no justification for charging a sliding scale minimum fee without showing that the legal and nonlegal services to be rendered are proportionately related to the amount of the mortgage loan.
*558 The retainer agreement as written is not in compliance with the Rules of Professional Conduct and therefore is unenforceable.
D. Is the Claimant Entitled to a Refund?
Claimant cannot prevail on his claim. Claimant and Galina Stepanyuk were the parties who entered into the retainer agreement with the defendant. Only claimant brought this action. Ms. Stepanyuk is a necessary party. Claimant could prevail if he either had an assignment of Ms. Stepanyuk’s claim or could establish that the $2,000 retainer came solely from his funds. He failed to do either. If claimant is allowed to prevail it would potentially expose the defendant to another suit for the same relief from Ms. Stepanyuk. Although the defendant acknowledges receipt of $2,000, defendant does not indicate the source of the monies.
In addition, the claimant alleges he paid the defendant $679 to assist him in negotiating reduction of his credit card debt. No retainer agreement has been produced in this regard nor any memorandum of understanding as to what the defendant was to do for the claimant. Claimant did not prove he paid any money in this regard to the defendant and defendant neither conceded receipt of such funds nor indicated that it received a retainer for these services from the claimant.
Conclusion
Claimant’s cause of action is dismissed without prejudice to renew by joining Galina Stepanyuk as a party either as a claimant or a defendant. If claimant had properly brought this action, defendant would be required to refund the $2,000 retainer, owing to its failure to comply with court and disciplinary rules and inability to prove licensing by the Banking Department.
Defendant was engaged in providing nonlegal services to the claimant. As such, no written retainer agreement or letter of engagement was needed. However, the services described were not incidental to providing legal services to the claimant, and therefore defendant must be licensed as a mortgage broker pursuant to Banking Law article 12-D. In addition, by holding itself out as providing legal services, it created the expectation on the part of the claimant and other clients that an attorney-client relationship existed. This expectation triggered the application of the Rules of Professional Conduct, requiring a written retainer or letter of engagement to be executed — one that was in compli *559 anee with the rules. As pointed out above, the retainer did not comply with the rules. This required the defendant to establish that the fee being charged was not excessive. Defendant failed to do so.
Defendant must return the $2,000 if the claimant can establish who is entitled to the money. Defendant is advised to correct the defects within its retainer agreement so as to avoid potential grievances being filed against it. The court is presuming that the defendant was acting in good faith when it entered into the agreement and that any violation of the Rules of Professional Conduct was unintentional and caused by a desire to enter into the recently developing field of law of renegotiating troubled mortgage loans.
Claimant cannot recover $679 he allegedly paid to the defendant in regard to his credit card debt as there is no proof that such payment was ever made.

. The named defendant is the law firm of Palant & Shapiro, P.C. Department of State, Division of Corporations records show that this firm was registered on June 1, 2009. The firm listed on the retainer agreement is Palant, Wolf & Shapiro, PLLC, an entity registered on March 11, 2008 and dissolved on December 14, 2009. The retainer agreement in question is dated March 9, 2009.

. This statute has not been corrected to be gender neutral.

. The court must question whether this sentence means what it says. As it is written, the defendant would only be compensated if it reduced a client’s interest rate, for instance, from 14% to 4%. It would seem that, based on the current mortgage market, the defendant would not be that successful in modifying mortgage loans to that extent, and therefore would not make any additional fees. The more likely interpretation would be that the defendant would be compensated if it successfully reduced an interest rate from 8% to 7.2%, a rate 10% of the previous rate.